In re RICHTER.

(District Court, D. Connecticut. October 26, 1911.)

No. 2,524.

BANKRUPTCY (§ 404*)—FORMER PROCEEDINGS—APPLICATION FOR DISCHARGE—NECESSITY—OMISSION OF DISCHARGE—EFFECT.

Where a bankrupt in former proceedings failed to apply for a discharge within the time specified by Bankr. Act July 1, 1898, c. 541, 30 Stat. 544 (U. S. Comp. St. 1901, p. 3418), the fact that such failure was due to his poverty was no ground for allowing him a discharge in subsequent proceedings with reference to the debts previously scheduled.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 404.*]

In Bankruptcy. In the matter of bankruptcy proceedings of Jacob Richter. Application by the bankrupt for discharge. Denied.

Abraham S. Aaronson, for petitioner.

Leonard Bronner, David Strouse, and Sol. J. Freudenheim, for objecting creditors.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

PLATT, District Judge. The essence of the report is embalmed in its opening page. Here it is:

"There was no question as to the facts. Bankrupt had previously, in 1905, been adjudicated bankrupt in New York on an involuntary petition. He was ordered to file schedules, and did so. Most of his property had previously been taken by creditors under chattel mortgages, and only $48 came into the hands of his trustee in New York. He obtained work in New Haven, and was notified by his attorney to send on money to apply for a discharge. He had not the money, and did not so apply. There was no money in the estate to pay the expenses of his discharge. Bankrupt was in no way to blame for not making the application in the former case, and was prevented from doing so by poverty. The debts from which he now seeks to obtain a discharge are the same which were scheduled in the former proceeding. The sole question is whether his former involuntary bankruptcy, no discharge being applied for, is a bar to obtain a discharge now from the debts scheduled by him in the former proceeding. It is claimed by the objectors that the decisions of the courts are uniform in their favor, and that the decision of this court in Re Levenstein, 180 Fed. 957, 24 Am. Bankr. Rep. 822, absolutely decides the present case. Nevertheless, as this case is one where the bankrupt ought to have a discharge, if it is possible to grant it, and the court must be desirous of granting a discharge, I will review the cases and submit the matter to the court."

He then reviews them at great length, and, except for a brief statement of his views as to the proper procedure in case the specification of objection shall be sustained, closes with the words now to be quoted:

"As it seems probable that, whichever way the District Court decides these cases, there will be an appeal, it has seemed to be best, in view of In re Elkind & Schwartz and In re Bluthenthal & Jones, to cite the different cases so far as I have found them, and submit the question to the court, although in view of In re Levenstein, I do not feel authorized to recommend a discharge. By request of counsel for objectors to a discharge, I state that the bankrupt was the only witness called, that he left New York shortly after being adjudicated in the former proceeding, and that the debts enumerated in his schedules in this proceeding are the same as enumerated in the former proceeding."

It will be noticed by the most casual reader of the excerpts from the master's report that he expresses an opinion, rather than states a fact, when he says that the bankrupt ought to be discharged, if it can possibly be done, and that the court must be desirous to grant it. There are no facts before me which warrant such an expression. The bankrupt's actions in the former proceedings do not invest him with an obvious badge of merit for good conduct. The master says he did not send money to his New York attorney, because he had none. That statement is based, as the master himself finds in the last excerpts, upon the statement of the bankrupt alone.

In some unknown way, the sympathies of the master seem to have been aroused. The present writer hopes that he is constitutionally as capable of a proper feeling in a deserving case as the master, and he certainly has no disposition to be critical; but, if everything was all right down in New York, at the time when the bankrupt's creditors practically drove him up to New Haven in search of work, it does seem queer that, within a year and a possible six months beyond, the bankrupt could not have saved some scattering remnants from the

gains of his honest toil, and with that help have been enabled to bring his case before the court down there, and have gotten the clean bill of health, which the master at this eleventh hour thinks the court must be seeking a chance to give him.

Until this report came up, I had supposed that the question at issue here had been settled for all time, so far as I could settle it, by my decision in Re Levenstein, 180 Fed. 957, 24 Am. Bankr. Rep. 822. When I examined the law and the facts in that case, I came to the definite conclusion that the Congress by the bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 544 [U. S. Comp. St. 1901, p. 3418]) had made it a condition precedent to favorable action by the court that the bankrupt shall apply for his discharge within the time limited by the statute. To avail himself of the benefit, he *must* take positive action within the time, and is not entitled to make excuses of any kind.

If Congress had intended that the courts should accept the excuse of poverty, it was the easiest thing in the world for Congress to have said so. It could not have escaped their attention, because the general subject of poverty was the thing they were legislating about. The main purpose of the statute, as I have said before, was to open a refuge for the poverty-stricken to escape from their immediate worriments, by turning over all that they have, or ought to have, to a trustee for the benefit of all their creditors. Incidental to that relief, and as an extra act of kindness, they can, if they are honest men, come to the court within the time limited by the statute and obtain a discharge from the burden of their debts, so that they can start again in the life struggle, with clean hands and courage and hope. But they must come within the time limited and ask, or their chance for that further relief has vanished, and nothing but time is left to heal their hurts.

In re Elkind, 175 Fed. 64, 99 C. C. A. 86, does not seem to me to be in any sense relevant to this discussion. In that case the bankrupts had done their part, but a typesetter's error had made the name of one of them appear to be *Max Elkund,* instead of *Max Elkind,* in the printed notice to creditors. For that trifling error they were refused by the court the relief which Congress intended them to have. It is impossible to think that any creditor could have been misled to his disadvantage by the interchange of vowels, and the reasoning of Judge Ward in support of the decision is convincing. The ancient rule of de minimis ought to take care of even a greater mistake than that.

It will be noticed, however, that the Circuit Court of Appeals did not reverse the order denying the second discharge, which was based upon the failure of the bankrupts to obtain their discharge in the earlier case. It appeared by the court records that, although the judge's memorandum warranted that action in the earlier case, the actual entry had never been made, and therefore the Circuit Court of Appeals intimates that it would be well for them to go back and have that done, and then appeal from that order. This would seem to indicate that the Circuit Court of Appeals has no disposition to evade the plain mandate of the bankrupt act.

The case of Bluthenthal v. Jones, 208 U. S. 64, 28 Sup. Ct. 192, 52 L. Ed. 390, has no relevancy to our issue here. Further words seem unnecessary; but, in closing, let me repeat: Every one *must* realize that, if he wishes to be helped by the bankruptcy act, it is his duty to follow the exact course pointed out to him in the law. 。

No matter how honest a man may be, he has certainly put his creditors to all the worry and trouble which they ought to bear, when he has not only prevented them from getting full payment for their debts, but has subjected them to the annoyance of watching him during one trip through the bankruptcy court. If he asks for his discharge at the end of that trip, they are bound to stop it, if they can, or accept it gracefully, if they cannot; but after watching him through his trip, and then for one year and a possible extra six months thereafter, and finding that he has not asked for a discharge, they are entitled to forget the matter, and rest in the assurance that they shall never again be bothered by the same matter.

The specifications of objection to the discharge are sustained, and the discharge refused.